Ms. Seabrook v. City of New York, and Ms. Ryder, whenever you're ready. May it please the Court, Alice Ryder from Wong Hecker, LLP, for the appellant James Seabrook. Mr. Seabrook's appeal boils down to two points. The City's policy of continuing to detain individuals who are past their maximum sentences was a conscious choice, and even if the City had no meaningful choice but to continue to detain Mr. Seabrook pending State authorization, there was no adequate process to safeguard his liberty interest of the highest order. If I may, I'll start with a due process claim. The District Court erred in concluding that there was no liberty interest implicated by the City's continued detention of Mr. Seabrook once it knew that his sentence had been reduced to zero and he was entitled to immediate release. Once it is established that this liberty interest of the highest order, which this Court has held, is implicated not just when the jury convicts, not just when a sentence is imposed, but also when prison officials implement the sentence as we have here, the question then becomes on this motion to dismiss, is there no procedure that could have been implemented to improve the situation of a person like Mr. Seabrook who was being detained by the City past his lawful release date? Can I ask, it feels like we only have half the defendants that we need here, and what I mean by that is if we think, if we agree that the law doesn't allow the City to unilaterally release somebody in this situation, that at a minimum that the authorization to release from the State authorities is required, it's hard for me to see from this complaint how we can infer that it's the City's policies rather than the State's failure to respond more quickly to a request for authorization that gave rise to this excessive detention. Why isn't the State a defendant here? Well, the short answer is that under the 11th Amendment, the State cannot be sued in federal court for damages, but the other part of the answer is that it was the City that held the keys to Mr. Seabrook's jail cell. They controlled the whereabouts of his body. It was the City that was statutorily required to keep accurate records of his time served and to do the calculation of his jail time credit, and in the event that that calculation had resulted in time left to serve on his sentence, it would have been the City's duty to deliver him to the State. But how can the City deliver him to the State if the State doesn't have, I mean, what does that look like, just dropping him off at the gate to a State facility? Well, in this case, there was no obligation to deliver him because the sentence was reduced to zero, but what the Due Process Clause requires is that once the City knows that it is detaining a person who is entitled to release, that there be procedures in place that safeguard that liberty interest, and the complaint plausibly alleges that there was absolutely no process. There was no way for Mr. Seabrook to raise his hand and tell someone at Rikers, I'm past my maximum, please do something that would then trigger a prompt response by someone at Rikers to take some steps to expedite what they should do once they are informed someone is past their maximum. There was no steps, you know, taken to expedite his release or even to obtain authorization if that's necessary in an expedited fashion. And the District Court's conclusion that those things did happen just isn't supported by the pleadings. The District Court's conclusion that the only and exclusive explanation for a 17-day delay in Mr. Seabrook's release was a permissible administrative delay was likewise not supported in the pleadings. And finally, the District Court's conclusion that no or that any hypothetical procedure would be as a matter of law futile is premature. Discovery could absolutely support Mr. Seabrook's due process claim, and this case should – his claim should be reinstated for that reason. You say they have no procedure. Is it incumbent on you and your due process claim to say what the procedure should be? And if so, what should the procedure be? At this stage on the motion to dismiss, it is not our burden to proposit precisely what the constitutionally adequate procedure would be. We don't have a record on which to consider what was the procedure, whether it was followed, whether there are additional steps that could be added, and how to balance the potential burden or cost of those and added efficacy of those potential procedures against this liberty interest of the highest order. So at this stage, it's enough that we have plausibly alleged that there was no process within the custodial system for Mr. Seabrook to protect Mr. Seabrook's due process, right, his liberty interest, rather. And discovery is necessary to explore the factual questions to answer and sort of assess the Matthews balancing test. In the New York system, is there no mechanism for or practice of a sentencing court sentencing someone and then assigning a report date to report to the state folks without going through detention by the county or the city or other places? The short answer is I'm not sure. I don't think there is. But the sentence was lawful. Our position is not that the sentencing court erred. What it did was commit Mr. Seabrook to city custody for purposes of calculating his jail time credit so that he would be released in accordance with the law. The problem began when the city knew, once the city knew that he had already served his entire sentence, and it continued to detain him without any procedures by which to meaningfully, you know, correct his unconstitutional detention. But he was committed to the custody of state, right, DOCS. And he was, because he wasn't presently in that DOCS custody, he was semi-committed. I'm not using the right terminology, but the instructions to the city were to deliver him to the state, right? Am I misreading the order? Yes. The language in the sentencing order was to deliver him to the state. So let's just, if the court had said to the sheriff in the courtroom, go deliver him to the state, the sheriff wouldn't have had the discretion to say, oh, well, you've actually served your whole sentence. I'm just going to let you go. But that is exactly what happened here. They never did deliver him to the state. Well, but they got state authorization. Presumably, they released him only upon that. But that was an inference against Mr. Seabrook's interest that was made prematurely on this motion to dismiss. What the city can and cannot do is subject to factual exploration. And in any event, the sentencing order — Why is that factual exploration? That feels like it's very legal to me. Well, the question of whether the city had a meaningful choice in whether it continued to detain Mr. Seabrook is, I think, a factual — a legal question that the district court erred in finding in the negative. So I think that the statutory scheme and the sentencing order all contemplate a situation, the typical situation in the vast majority of cases where a person receives an indeterminate sentence, they're remanded to the city, the city calculates — or to the city pending calculation of the jail time credit, there's time left to serve on the sentence, and then the city delivers that person to a DOCS facility. The statutes also all contemplate that there be a sentence to be complied with, that there be a term of a sentence, and that that term of a sentence, per the penal law, is diminished by the amount of time that that person has already served in — But the statutes also say that the term doesn't even start until he gets to DOCS. The term says that it doesn't start until he gets to a — It may be still — An institution within DOCS's jurisdiction. Yeah. But the question is less about legal versus physical jurisdiction and about what the statutes actually require and what are they silent about. And in this case, once the city knew that Mr. Seabrook's sentence was zero, there was no sentence to serve, the statutes did not compel his transfer to a State facility. And, in fact, the best evidence of that is that he wasn't transferred. It's not — it simply defies logic that the statutes would compel a policy when what the statutes expressly say, which is physical delivery to a DOCS facility, did not happen in this case. Right. So I want to make sure I understand, because I think there might be — You have sort of your argument and then maybe your fallback argument, right? Am I right about that? And your — and your — your — your lead argument is that the city could have released him on its own initiative upon determining that there was no sentence to serve and its failure to have a process to do that and to do that is — is at the base of your due process claim. Your fallback argument is even if the city wasn't — didn't have the legal authority to unilaterally release him without some involvement of the State, they still need a process by which someone in his situation can ensure that the city is taking the steps it needs to take to get the State approval. Is that — am I right that those are two sort of distinct — Yes. Generally, that is true. One slight tweak would be that in the lead argument, as you characterized it, it's not that — it's not necessarily that the State — I mean, the State's authority to release him is central to all three of our claims, right? The Monell Eighth Amendment claim, the individual Eighth Amendment claim, and the due process claim against the city. But with respect to the Eighth Amendment claim and the statutory context and — and the statutory mandate, the vives question of this case, the district court's determination that the city had no meaningful choice doesn't implicate the requirement that under due process the city — even if that is true, that the city was obligated to protect his liberty of interest. And in terms of sort of the first argument, there's maybe two strands of it. One is the city had a policy of not — of waiting until it physically delivers somebody to the State before — even if their time is complete, they don't have time to serve. And maybe the fallback is the city has a policy of waiting for State authorization before it releases somebody. And both of those are not lawful in your view. But they are — it seems like in the briefing there were maybe two different strands of that argument. Sure. And to clarify, that is because initially as pled and as we understood, the policy was to physically transfer. And in fact, the sentencing transcript, you know, makes that clear. Everyone talked about him stepping in, right? That — that practice that everyone knew would happen doesn't make it constitutional, but it does mean that that's — that's what generally speaking the city's practice was. In the course of briefing this motion, both below and in this court, the city seems to have abandoned its claim that it's a policy to physically transfer, because of course that didn't happen here, so it would be hard for that to be the policy.  But that rather that they were compelled to detain him until they had authorization from the State. But the statutes say absolutely nothing about authorization from the State, nor does the sentencing order. Right. But — but that it would be hard for the city to claim that that's their policy. It would also be hard for you to claim that that's the city's policy, since it's not what — the physical transfer is not — Sure. And — but it's consistent with our argument, because once the sentence was reduced to zero, the statutory obligation to physically transfer went away. It doesn't exist anymore, because there is no sentence for him to serve. So on your Eighth Amendment claim, I do think it's incumbent on the plaintiff to plausibly plead a meaningful choice. Assume that the court were to disagree, that simply releasing this person for a sheriff to make the calculation that this person has served their entire sentence and simply release them, notwithstanding the sentencing and commitment order, is not a meaningful choice. What would the next most meaningful choice be? The one that occurs to me, which I don't see you necessarily making in your — or suggesting in your briefing, is that the city corporation counsel's office, which represents the same city of New York as employs the Rikers personnel here, could go back to the judge with a proposed amendment to the sentencing and commitment order that says this person has now served the maximum amount of time authorized by law and should be released. Why are you not — is that a meaningful choice? And if so, why is that not one you're urging upon the district court? That is a meaningful choice, that the court counsel could do that. But we maintain that the sentencing order was not unlawful. There was nothing wrong with the sentencing practices here. What occurred and what the problem was, was the city's decision to continue to detain Mr. Seabrook after it knew that he had already served the entirety of his sentence. And the city is already tasked with doing this calculation. The minimal additional burden of pressing some buttons or perhaps communicating something in a particularly expedited way, like that — Is it part of Mr. Monastero's trial description to make this calculation? I'm sorry. I didn't hear that. I'm sorry. So the individual defendant — Yes, Monastero. Is it part of his job description to make that calculation? I mean, he's certainly responsible for the custody and management unit that does make that calculation. And as alleged in the complaint, as of January 31st, the day of Mr. Seabrook's sentencing, Defendant Monastero knew that he was entitled to immediate release. And as the complaint alleges, he recklessly failed to act. So even if the state law compelled the city to continue to maintain — or left the city with no meaningful choice, as you posit, Defendant Monastero is alleged to have committed — you know, to have been deliberately indifferent. And that is a separate part of Mr. Seabrook's Eighth Amendment claim. The district court went to great lengths to find facts regarding Defendant Monastero's state of mind that are well beyond the pleadings in the complaint and inferences that can be drawn therefrom. He repeated numerous times that Defendant Monastero was part of the effort to rectify the problem, that he was willing to undertake an alternate course, that he attempted to hasten Mr. Seabrook's transfer. None of those facts are in the complaint and, in fact, run contrary to the allegations that Defendant Monastero knew for 17 days that Mr. Seabrook was entitled to release and failed to act until the 17th day. But the first allegation I see that actually — I mean, there's sort of constructive knowledge or imputed knowledge based on his position. But the first time I see in the complaint an allegation that actually ties Monastero to the communications about this or to sort of pince him with actual knowledge was the e-mail he was copied on the morning of the day in which your client was released. Yes, that's true. He did — we're aware of no acts that he took until 17 days after he knew that Mr. Seabrook was entitled to release. Well, let me just tell you something. What's the allegation? The allegation that tells us he knew and was taking no acts prior to that is it was his job to know, basically? It was his job to know per paragraph 21, but that in paragraph 79 of the complaint, it says DOC knew as of the date of sentencing. Well, it's the DOC, but now we're asking — we're talking about an individual. That's what I'm just trying to figure out. Yes. The inference is that, you know, he was involved in the day-to-day operations and decisions and actions of the custody management unit, which is in charge of calculating a person's time served and implementing their sentence. And it definitely gets to he should have known. I could see that inference. I'm just trying to figure out whether that's enough. We posit that it is, Your Honor. You know, I think the fact that what he did is so important and what he did or didn't do after he knew that Mr. Seabrook was entitled to release is important is evidenced by the fact that the district court repeatedly, multiple times, restated its findings that Defendant Monastero did the best he could. And those allegations just are not supported in the complaint. If there's not a plausibly pled primary violation on the part of Mr. Monastero, could there still be a plausibly pled claim against the city under Monell? Absolutely. This court's precedent is very clear that individual liability is not prerequisite for finding of municipal liability and that, in fact, good faith implementation of a city's policy can state a claim under Monell. All right. I think we have your argument. You have some rebuttal time. Thank you. May it please the court. My name is Jameson Davies for the Appellees. This court should affirm the district court's decision dismissing this case for failure to state a claim. To start, Seabrook did not plead an eighth amendment violation. His allegations taken as true do not support inference that the defendants acted with deliberate indifference to his constitutional rights. Instead, DOC implemented state law and a state court sentencing order, and in that circumstances may not be held liable. The district court also properly dismissed the procedural due process claim. For the same reason that DOC could not defy state law in the state court's order, it was not responsible for the deprivation of any alleged liberty interests. Moreover, under the familiar procedural due process balancing test and the specific circumstances presented here, additional procedural safeguards would be administrated costly, undermine the implementation of sentencing orders, and do little to mitigate the risk of erroneous deprivation. I think we can start with the procedural due process arguments. That's where they started. So before you even get to the balancing test, they have to plead an underlying liberty interest that was implicated by the conduct of the defendant. And here, the DOC had no meaningful choice in continuing to detain him. I think it's— But does that go to the question of whether or not there's a liberty interest? Your view isn't—or maybe it is. Is your view that there's no liberty interest in the right not to be detained past your sentence? I think the distinction is they have to allege a liberty interest that was harmed by the conduct of the defendants. Well, it's sort of—okay, yes. So in this case, there was—to the extent, and as the district court explained, to the extent that there was a liberty interest that was harmed here, it was the sentencing court's commitment order that, you know, put him back was the, you know, proximate cause of the liberty—the denial of liberty interest. The fact that, you know, DOC could not release him means that they can't be responsible for any deprivation of the liberty interest here. You know, and I think it's critical to look at the sentencing court's order on page 370 of the appendix. As Your Honor noted, the order says the defendant is committed to the custody of the State Department of Corrections. At that point— It's very dope that these sentencing commitment orders—I mean, it is a subform order, and every person that's sentenced, they use the same form that the judge can write things on it. I mean, the idea that that was the thing that prevented his release, I mean, that didn't change between when you took him into custody and when he was released. And so the argument that you couldn't have released him because it would have violated this order, this document, what prompted—the document didn't change. No one went back to court, and yet he was released with this same court order, if you want to describe it that way, in effect. Right. So I think that what the difference is—so the order, it says he's hereby committed to the custody of the State. So at that point, he's in the legal custody of the State. And then it says the City Department of Corrections is directed to deliver him. So we were under an order to deliver him to the State Department of Corrections. I'm sorry, just first, as I'm thinking about this, this distinction you're making between being in the legal custody and the physical custody, what is—what are you basing that on? Just how the State, you know, system works. I mean, I guess what I meant by that is, is there a law or is there some statute that makes this distinction, that, oh, he's actually in DOC's—or I'll say the State's legal custody, but he's in the City's physical custody, and the order from the judge was saying you are now in the State's legal custody, but the City has physical custody, and— Yeah, so I think that stems from CPL 43020 and the penal law 7020. So CPL 43020 says, when a sentence of imprisonment is pronounced, the defendant must be committed to the custody of the appropriate public servant and detained until the sentence is complied with. And the appropriate public servant, as no one disputes in that case, is the State. And so the sentence is complied with. And so here the sentence has already been complied with. So what is the relevance to that provision in this circumstance? I think the relevance is that it is the appropriate public servant who has the responsibility of determining whether or not the sentence has been complied with and releasing him. And I think it's clear— The City is responsible for making the calculation to confirm that he has served his time. The City is responsible for making the calculation of the time that he has been in City custody and delivering that to the State. That's Correctional Law 600-A. It doesn't give the City the responsibility for determining whether or not that discharges his sentence, only that they have to give the State. And I think that actually supports our argument, because they're required to give the State that calculation and certify that it's correct. And I think also, just turning to Penal Law 7020, which I think is clearer, even clearer, the Court says the Court shall commit the defendant to the custody of the State Department of Corrections for the term of his or her sentence and until release. So that— For the term of his or her sentence. And the term of this sentence had already expired. Right. But I think if you read the sentence as a whole, it says, to the custody of the State Department of Corrections until release. So I think that until release has to refer back to the State Department of Corrections. So until release by the State Department of Corrections. Can I just ask you, just as a hypothetical, if in this case all of the facts and circumstances were the same, but he remained in DOC custody for six months, is your position the same? I think our position is the same in terms of the responsibility for delivering him. There may be, you know— But he'd still have no liberty interest because you're just complying with the order that you're, you know, he needs to be transferred to State custody and until something happens, there's no liberty interest. You're just following the law. If he stays six months past the sentence, there's still no issue? I think there's no issue as to the City. I think this goes to Your Honor's point from earlier that really, you know, if the State, if in that circumstance, and maybe even in this circumstance, the State ought to be a defendant here if that is the issue or they should be challenging the operation of how these laws work. They may have a claim, you know, about the constitutionality of the— And what if their claim is, oh, you know, the City didn't give us his time calculation for six months. That's why we didn't do anything, which for all we know, that might have happened here, but we don't have—there hasn't been discovery. We don't know. So what if that's the answer that, oh, well, the State says we were waiting for the calculation from the City and they didn't give it to us for six months? I think that if there was—I mean, that's essentially what happened in Heard where the calculation was not correct. It wasn't not—it wasn't given. It wasn't correct, but this Court still held that there was no underlying Eighth Amendment violation. So I think, you know, if— Well, if the City settled out, right, there was no Eighth Amendment violation by the State. Correct. Correct. We don't actually—that wasn't a statement that the City didn't bear responsibility for that. Right. And I think there—I think really fundamentally, maybe in that case if there were a reasonable inference that the reason was that the City didn't give the correct calculation, but here there's nothing in the pleadings that show that given the amount of time. He was only in for 17 days. His own attorney at sentencing said, you know, I think he's going to be in for about two weeks. The Court said he was going to be transferred upstate. So at that point, I think there's no—nothing you can infer from the facts that are pled in the complaint that there was any issue with the calculation of his time. As soon as we got— You're saying—I mean, if I'm putting myself in the plaintiff's shoes, you're saying because there's a longstanding pattern and practice of this constitutional violation, there's no constitutional violation. I mean, if it takes two weeks to get somebody whose sentence is essentially fulfilled, released, doesn't that seem like a problem if that's the standard operating procedure? I mean, I think it could be a problem with the way—with the State. And also—but I think, you know, it's not necessarily—in that case, it's rare. It's a rare circumstance where someone is sentenced who is already fulfilled more than the max sentence and has to go in for this time calculation, I believe. But you're asking us to assume that the City was doing its part to effectuate the delivery or get the State authorization or whatever, and that the problem was with the State. And I could well imagine that discovery might show that to be the case. But I don't understand why on the pleadings we could assume that. I think because of the way that this claim was pled, they plead that—you know, they plead their communications with the prison officials. They, you know, acknowledge in their pleadings that the officials said they were working with the State to get him released, and he was released on the exact same day that the State did provide that authorization. So I think on these—on this particular pleading, there's just no reasonable inference to the contrary. Apart from that, that doesn't tell us that—I mean, for all we know, they didn't even reach out to the State until that morning, and then they got the State authorization, and then they were released. And that would be a pretty significant problem, wouldn't it? I'm not sure that it would be. I mean, I think this Court explained that, you know, routine administrative delays are not the kind of issue that rises to the level of an 8-to-9 violation. So 17 days in detention for somebody who actually doesn't owe any time, you would call that a routine— Well, I mean, this Court has held that up to four months was not a significant, you know, a significant enough time to rise to the level of an 8th Amendment violation. And the Court— I'm really looking at the due process. Nobody would say four months wasn't a due process problem, or would they? You're talking about the procedural due process? Yeah, I think so, yeah. Yeah, I think there, the issue is, in addition, you know, the fact that we've already been discussing that it wasn't the City who violated his liberty interest. He had meaningful opportunities to be heard. He could have asked in the sentencing court to be released on his own recognizance. He'd been released—he'd been out before that. His lawyer never asked for him to be released. So is that done? Is that a thing, is to be released on your own recognizance and then report to the State? Is that done in some cases? I can't say for certain. I think it's outside the record, and we're not the DA's office, so I don't know the criminal law as well. But it is clear that his lawyer never made that request. Well, I'm partly curious. I guess there's a legal question and a practical question, and the legal question is if you interpret the statutes the way— it seems like there's an interpretation of the statute that doesn't really invite that because it seems to direct that if you're imposing a sentence, you shall commit to the New York custody for the term of the sentence until released, and doesn't—there's nothing in the statutory structure that describes such an alternative. And I was just curious. I guess nobody here can say, oh, yeah, the practice is that never happens or occasionally happens. Yeah. I mean, I would think that the sentencing court has the plenary authority to release him because he could release him before that, but I'm not certain about that. But also, he could have filed a grievance in the prison system. He doesn't allege that he did that. There were—you know, he was able to be heard at a meaningful time. That could take— I'm sorry? I think common sense would dictate that his grievance through the prison system would take some time to work through the system. Assume, just for purposes of this question, that discovery in this case would have revealed that the calculation of how much time has been served takes on average five minutes to perform and that, in fact, as a matter of practice, the city is taking 17 days or longer, on average, to perform that calculation, including in cases where, as here, a person has already served their maximum sentence. Would that fact, if reduced in discovery, be irrelevant to the due process analysis? I think it would go to—I think if you passed the first prong of whose sort of fault it is and got— I assume there's a liberty of interest in play here. Yes. I think that would go to the balancing question of additional process.  But I think there's no—you know, the issue is that having the ability to get expedited hearings on any allegation would, you know, outside of the traditional grievance process, could create a significant administrative burden. When you're talking about expedited hearings, I don't understand. I mean, it's—I'm not certain why you're coming to the conclusion that a remedy or a practice would require hearings. If we're talking about what the city could do, not that, you know, bring people back into court or anything of that sort, if there's some procedure or practice that just involves changing something in the admin of how DOC handles calculations, that's not— There's nothing in the record to support that this is necessarily going to be some onerous process that's required here. And maybe it would be or it wouldn't, but I think the assumption that, oh, this is going to require going back into court, I don't think that's the case, and I'm not certain why you're framing it that way. If we reject the idea that this is a sentencing court issue as opposed to, maybe it is a DOC's city corrections issue. I think two responses. I think one is that there's actually no allegation here that the calculation was deficient in any way. So I think that is not really the procedure that they take issue with. And I think so, you know, in the case where— and it's not always going to be the simple case like this one where it's, you know, obvious from the face of the sentencing transcript that the person was over-detained. People, if you have this procedure, anyone could potentially bring a claim, and you have to go back and look and do the calculations and make sure that, you know, that it's correct. And, you know, DOC is not— I think I'm just taking issue with the idea that the only practice would be some type of legal claim that you could bring as opposed to if DOC's city had, you know, a designated person who's responsible for addressing claims by those whose time is maxed out or something of that sort. I don't—the way that this could be addressed is not clear to me, but I don't think it requires necessarily going back into court. We just don't know what the process is. And so that's part of the—without having the information, maybe you could make the argument that, oh, actually, this would really be burdensome. But if you accept that there is a liberty interest here and it's supposed to be balanced, I don't think we can assume that it's going to be some burdensome thing, I guess. I take that point. I think the more fundamental issue would be that whatever process DOC might have, it's still going to ultimately be reliant on the state to let the individual go, certify that they've completed their sentence or take custody, you know, on a delivery. I want to get to that. Can I just press you on that a little bit?  Maybe we can step back just for a moment. We're talking about specifics of sentencing calculations and we're in the weeds of a number of sections of the New York penal law. But if we step back, it is undisputed in this case, I think, that a person who served the entirety of a seven-year sentence, who paid his very substantial debt to society, was held in prison for no valid legal reason at all for 17 days, which is a long time, during which somebody can miss birthdays. I hope we all agree that everybody who has it in their power to make sure that does not happen is doing that. And so I just ask you, as an officer of the city and of this court, what procedure do you propose to make sure this never happens again? And on a more specific level, is it possible that those procedures should lie within the four corners of the corporation counsel's office itself? That a lawyer for the city should go to the judges who issue these sentencing commitment orders, which are not even signed by judges, right? It's a clerk who signs this, and say, this needs to be rewritten so that there's an exception to our obligation to deliver somebody into state custody for somebody who has already, by our calculations, served the entirety of their time, or something. What can be done? Right. I think, I mean, I'm hesitant without, you know, having the opportunity to talk to my clients and things like that to propose specific procedures, because I don't know enough about how DOC works. I think also a potential issue is that the DA's office is entirely separate, and they would be the ones, if they go in on resentencing, the DA's office would generally be the one to go in and appear in court on a resentencing, and we don't have control over how the DA's office, they're separately elected and separately run. There's no way that the Corporation Counsel's office can get this issue in front of a judge to say, look, there is a flaw in the system here, whereby we are set up structurally. I understand this fact pattern may occur relatively rarely, but there are a lot of people passing through New York City prisons, and so even if it's rare on a percentage basis, it's probably still a large number of people. There's no way for the Corporation Counsel's office to get in front of a judge on this issue. I could look into this. I'm not certain that there is. I think we don't generally appear in criminal court. I think almost never. I think really it would be, the first thing would be for his own attorney to ask that he be released and to ask the sentencing court to modify their order. I think that would be, you know, he's charged with advocating for his client. He knew that his client had completed his sentence, and he didn't ask at all. He, in fact, conceded that his client was going to go back in. And so I think, you know, the first line of defense would be his own attorney asking the sentencing court to modify that order and say he should be released. Wouldn't the first line be for there to be a designated point of communication within DOC for his attorney to reach out to? And, I mean, I understand the argument, and I don't think the pleadings tell us this. I understand your position that discovery will show that it was a state in this case. But to the extent that there's a concern about the city doing everything in its power, if, as my colleague has posited, the calculation takes an average of five minutes, you shouldn't have people staying overnight in terms of any delays occasioned by the city as opposed to the state. Right now, is there a process, a non-ad hoc process, to elevate the rare situation where somebody has already essentially fulfilled their sentence to get that in front of the right person and get it addressed immediately? I'm not aware of any process for that specific situation. There is a general grievance process. There's also the process that the complaint lays out where his counsel contacted DOC. DOC responded and said, We're working to try to expedite his release from the state as he pleads in his complaint. And, in fact, he was released the day that we got authorization from the state to do that. Who represents the DOC in court? We represent the DOC. The corporation counsel represents DOC. So, again, why not? You don't even have to appear. Just file, on behalf of the DOC, a request to amend the judgment here. There's a rule that you're not allowed in Superior Court? So I think, again, without having done research, I don't want to say exactly what is authorized by the statutes or what we can do. I think that's possible. I think, as a practical matter, getting that order and filing would probably take longer than the 17 days it took here to get an order released from the state. If it's filed as an emergency request to amend the sentencing and commitment order, it would take longer than 17 days? I mean, yeah, yeah. If you did it on an emergency basis, maybe. But I think, I guess, I don't think that that process, one, is incumbent on DOC, and, two, would be satisfied. But is that a meaningful choice that DOC has to get the lawyers involved? Well, I think that it is potentially a meaningful choice to challenge the sentence, but I think that under the statutes, that's just not really a challenge. You'd be asking for clarification as much as an amendment. Yeah, I think, I guess my position would be that, you know, if there was someone who wanted to get an immediate release in that way, I think the primary thing should be his own criminal defense attorney asking for that relief. I mean, is it, well, is it clear even if the sentencing and commitment order, if it were worded differently, that DOC would have decided, like, oh, actually, we can just release him directly. We don't have to go through the state at all. I guess, I mean, it would depend, I suppose, on how the order was worded. I think that goes to the fact that, you know, it's not clearly established that this would, you know, interpreting the order and complying with it is an Eighth Amendment violation. If the order said to, you know, if the order said to release him, I think we would have to follow court order. Well, not if the, I mean, so if this, well, I guess I'm getting into the weeds here, but the sentence and commitment order, as we're calling it, is not the same as a, well, in any event. I guess I'm questioning whether or not that is the holdup, because if your view is, well, we don't actually, DOC doesn't actually have custody anyway, what action can be taken to change things from your point of view? If you're saying, well, we can't do anything until the state is involved, unless until the state authorizes us to act, I'm not sure what difference under that view a difference in the sentence and commitment order would make. I think that, you know, we're obligated to follow the court's orders. So I think if the order was different, we would still, you know, be obliged to follow it. I think a lot would depend on the specifics of the order. But I think, you know, it is, the state is, the state's order, the sentencing order, complies with CPL 403020 and Penal Law 7020. And I think, you know, this has been historically an issue where the cities and counties have had issues with getting the state to take custody. That's why 600A basically gives us the opportunity to get money back if they, you know, don't timely take custody. Right, but those provisions are about when, you know, the state takes too long to take custody of someone and your, you know, DOC is trying to get reimbursed for that. That's all finding well if the person is still serving their sentence. And so most of the situations we're looking at are no one's being harmed, the incarcerated person is not being harmed. It's a question of who is responsible, who pays for their housing. That's very different than someone serving, is in prison to pass their time. And so I just think those, these statutes are not written to address that. Like there's nothing in the language of these various provisions that says to me when someone served their maximum sentence, you are still required to keep them or this is supposed to happen or that. It's not, they're not addressed to this situation, it seems like. I mean, I agree that they're not written to this unusual situation, but I think applying them as read or as written that the determination, what they do make clear is the determination is up to the state Department of Corrections as to when the person is discharged their sentence and when they can be released. I think that's fundamentally what they say. In most cases, you know, you're not going to have this unusual situation and the state is going to just release them at the end of their sentence. I think, you know, if they have a challenge to the statutes themselves, they can bring that challenge. They didn't challenge the statutes here as unconstitutional. They didn't plead the state in, which they could have done. All right. I think we have your argument. I appreciate it. Thank you, Your Honor. Thank you very much. Your Honors, the focus of Mr. Davies' argument and your questioning is the right one, which is it focuses on all of the questions about that we need discovery to establish. What could have been done differently compared to what we know did happen? We know he served his maximum sentence as of the date of sentencing, and we know that nothing happened for 17 days, and what we don't know is maybe something that did or did not happen. But there are many opportunities within that 17 days and the process that needs to happen where things could have been better, right? There's the time it takes for DOC to actually calculate the jail time credit. As Judge Comedy posited, it could be five minutes, and if it is and it took three days, that's a problem and something that could be expedited. There's the time once the city knows that the time calculation shows that the person has already served their maximum sentence before they then inform the state of whatever they need to inform the state of. And then even after informing the state, there is the question of what did the city do then to secure a prompt release. Did they email every day? Did they call the right person every day? Were they doing everything in their power to secure the most prompt release of this person who owed no time and was languishing on Rikers Island? Secondly, I just want to point out as well that the questions regarding the statutes that Your Honor just mentioned in terms of context around what the statutes expressly mandate versus what they don't expressly mandate, this court, both in Vives itself and in subsequent cases interpreting it, have remanded even summary judgment decisions to expand the record and to gain more context regarding the city's authority to implement its policy. And so we posit that here on a motion to dismiss in particular, remand on the Eighth Amendment claim would be appropriate to further explore that. All right. Thank you very much. Thank you to both of you. We will reserve decision on this case. And thank you for your arguments here.